UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                              Plaintiff,

        v.                                              Case No. 00-CR-246

WILLIAM ANTHONY JULIUS,

                              Defendant.

## MEMORANDUM DECISION

This court issued an arrest warrant on April 3, 2013, upon a petition by the U.S. Probation Office claiming that Julius violated a term of his supervised release by walking away from his halfway house placement.  Following Julius's arrest, he filed a motion to quash the arrest warrant asserting that this court lacked jurisdiction to issue the warrant because his term of supervised release expired in 2011.  During a hearing on May 2, 2013, this court noted that because Julius had been arrested and the warrant executed, the motion to quash must be denied as moot.  Julius then moved to dismiss the revocation petition for lack of jurisdiction, claiming that his three- year term of supervised release had expired and that he should be released from custody immediately

On Wednesday, June 19, 2013, a hearing was conducted on Julius's motion to dismiss.  The government argued that Julius's three-year term of supervised release commenced on April 2, 2013, because the term was tolled while Julius was detained nearly five years pursuant to the Adam Walsh Act, 18 U.S.C. § 4248.  For the reasons set forth on the record and articulated below, the court found that Julius's supervised release

expired, that the motion to dismiss the revocation petition should be granted and that Julius should be released from detention.

This court sentenced Julius on September 21, 2001, following his guilty plea, and remanded him to the custody of the United States Bureau of Prisons (BOP) to serve a 51-month term of imprisonment and three years of supervised release (with the first 120 days in a halfway house). Although Julius was scheduled for release by the Bureau of Prisons ("BOP") on June 2, 2008, the government filed a Certification of a Sexually Dangerous Person pursuant to the Adam Walsh Act on May 23, 2008.

Senior U.S. District Judge Earl Britt held the civil commitment proceedings in abeyance on May 27, 2008, pending the appellate process in *United States v. Comstock*, 130 S. Ct. 1949 (2010); and, as a result, Julius remained confined by the BOP. After the Supreme Court ruled that the Adam Walsh Act was constitutional under the Necessary and Proper Clause, the district court lifted the stay on June 14, 2010, and denied Julius's motion for release. Julius continued to be held in the Butner, North Carolina, Federal Correctional Institution until the district court issued a February 19, 2013, decision finding that Julius was not a sexually dangerous person.

On April 2, 2013, Julius was released to a halfway house and ordered to report to his federal probation agent. Within an hour of arriving at the halfway house, Julius left and didn't return. This court issued a warrant for his arrest and these proceedings followed.

Section 3624(a) provides that a "prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment . . . ." 18 U.S.C. § 3624(a). A term of supervised release "commences on the day the person is released from imprisonment." 18 U.S.C. § 3624(e). However, the term of supervised release does

2

not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime. 18 U.S.C. § 3624(e).

Mindful of the statutory language, the court is called upon to determine whether Julius was "released" from imprisonment following the expiration of his sentence and/or whether his civil commitment tolled the term of his supervised release pursuant to the judgment of conviction issued by this court on September 26, 2001. In this regard, the government has cited the stay-of-release provision found in the Adam Walsh Act, stating that "a certificate filed under this subsection shall stay the release of the person pending completion of procedures contained in this section." 18 U.S.C. § 4248(a). In addition, it has noted that the Supreme Court has held that a term of supervised release does not run while an individual remains in the custody of the Bureau of Prisons. *United States v. Johnson*, 120 S. Ct. 1114, 1118 (2000)("Release takes place on the day the prisoner in fact is freed from confinement.")

In *Johnson*, the defendant argued that the extra time served on convictions that were later vacated should reduce the term of his supervised release. *Id.*, 120 S. Ct. at 1116. The Supreme Court focused on the first sentence of 18 U.S.C. § 3624(e), which provides a term of supervised release comes "after imprisonment" and once the prisoner is "released by the Bureau of Prisons to the supervision of a probation officer." Under this language, a term of supervised release does not run while an individual remains in the custody of the Bureau of Prisons. *Id.*, 120 S. Ct. at 1118. However, Johnson remained in confinement pursuant to a criminal sentence until that sentence was declared invalid. The Supreme Court did not address the interplay between the supervised release statute, § 3624(3), and the effect of a civil commitment under § 4248.

3

Julius cited a more recent decision of the Ninth Circuit Court of Appeals, *United States v. Turner,* 689 F.3d 1117 (9th Cir. 2012). In *Turner*, the defendant was detained under the Adam Walsh Act's stay-of-release provision following the expiration of his criminal sentence. *Id.*, 689 F.3d at 1121. Notably, the government conceded that civil commitment under the Act was not imprisonment and therefore did not operate to toll the term of supervised release. *Id.* Regardless, the defendant waited nearly five years for a commitment hearing and was never civilly committed under the Act. *Id.* Under the government's logic, the supervised release term was tolled during the interim period until Turner's commitment proceedings concluded. *Id.* The Ninth Circuit held that, during the almost five years that Turner awaited a commitment hearing, he was not "imprisoned in connection with a crime" which was required to toll the term of supervised release. *Id.* To hold otherwise would extend the defendant's term of imprisonment thereby raising serious constitutional questions. *Id.*, 689 F.3d at 1125.

The dissent in *Turner* framed the issue as whether the term of supervised release can begin to run when an individual is not free to leave a prison. *Id.*, 689 F.3d at 1126. Because commencement of the term cannot begin until the individual is allowed to physically leave the prison, the fact of physical confinement controls, according to the dissent. *Id.*, 689 F.3d at 1127. While admitting that it did not seem fair that a person's term of imprisonment may end without him or her being freed from confinement thereby preventing the commencement of supervised release, the dissent felt it could not rewrite the law. *Id.*, 689 F.3d at 1128. On the other hand, the majority rejected the argument that this position undermines the rehabilitative goals of supervised release because the

4

"government had every opportunity to ensure that Turner received treatment and rehabilitative services during the four and a half years it delayed in providing him a civil commitment hearing." *Id.,* 689 F.3d at 1124, n. 3.

In contrast, several district courts facing this issue have held that a supervised release term does not begin to run while a person remains in prison awaiting a civil commitment hearing under the Adam Walsh Act. *See, e.g., Tobey v. United States*, 794 F. Supp. 2d 594 (D. Md. 2011), appeal dismissed as moot*, 470 F. Appx. 113 (4th Cir. 2012)(parties entered into a settlement agreement whereby the defendant stipulated that his release from imprisonment was lawfully stayed); *United States v. Revland*, 2011 WL 6780868 (N.D. Iowa Dec. 27, 2011); *United States v. Francis*, 2011 WL 1642571 (E.D. Ky. May 2, 2011). These courts have reasoned that a defendant remains in custody pending the determination of whether he is a sexually dangerous person and therefore has not been "released from imprisonment" for the purposes of commencing a term of supervised release. Put another way, according to their reasoning, "imprisonment" applies to any time spent in custody regardless of whether the individual was serving a criminal sentence, in the view of these courts.

As an initial matter, this court finds that Julius was no longer imprisoned in "connection with a conviction for a Federal, State, or local crime" within the meaning of 18 U.S.C. § 3264(e) when Senior District Judge Earl Britt, pursuant to a May 23, 2008, order stayed his release effective June 2, 2008. At that moment, Julius's re-imprisonment was pursuant to Judge Britt's order that he be held pending a civil commitment hearing. The stay order lifted on June 14, 2010; however, Julius remained a civil detainee until Judge Malcolm J. Howard found that he was no longer a sexually dangerous person and

5

directed that he be released by the Attorney General. Hence, this court concludes that Julius's criminal sentence was not extended beyond June 2, 2008, regardless of the proceedings that followed. Therefore, more than three years have passed since Julius was civilly detained and the stay order was lifted. Hence, Julius is no longer subject to supervision pursuant to this court's judgment of conviction. For these reasons,

IT IS ORDERED that Julius's motion to dismiss the pending revocation petition is granted for lack of jurisdiction.

IT IS FURTHER ORDERED that Julius be released from the custody of the U.S. Marshal.

Dated at Milwaukee, Wisconsin, this 10th day of June, 2013.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE

6